The **PAX COMPANY OF UTAH, a Utah corporation, Plaintiff,**

v.

**UNITED STATES of America et al., Defendants.**

Civ. No. 207-7.

United States District Court, D. Utah, C. D.

Sept. 16, 1970.

Donald B. Holbrook and I. Daniel Stewart, of Jones, Waldo, Holbrook & McDonough, Salt Lake City, Utah, for plaintiff.

C. Nelson Day, U. S. Atty., Glenn J. Mecham, Asst. U. S. Atty., and Harold M. Carter, Atty., Dept. of Agriculture, for defendants.

Carl Eardley, Acting Asst. Atty. Gen., Civil Div., Dept. of Justice, R. Stanley Harsh, Atty., Dept. of Agriculture, and C. Blaine Fielding, Atty., Environmental Protection Agency, for defendants-appellants.

## ORDER DENYING MOTIONS TO DISMISS AND GRANTING PRELIMINARY INJUNCTION AND FINDINGS OF FACT AND CONCLUSIONS OF LAW

RITTER, Chief Judge.

This matter came before this court on a hearing on the plaintiff's application for a preliminary injunction and upon defendants' motion to dismiss for lack of jurisdiction and failure to state a claim. Due notice of the hearing on the preliminary injunction was given defendants by stipulation entered into August 20, 1970. Defendants filed their motion to dismiss on September 1, 1970, three days prior to the date set for the hearing on the preliminary injunction. The court received documentary evidence and heard testimony that was admitted without objection in open court, and examined the verified complaint. Plaintiff filed a memorandum in support of its application for a preliminary injunction and in opposition to the Government's motion to dismiss. The Government filed a memorandum directed solely to its motion to dismiss. After having heard oral arguments of counsel for the respective parties, the court finds and holds as follows:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

(1) This court has jurisdiction over the parties and this cause and may grant the relief hereinafter provided pursuant to the provisions of 28 U.S.C. §§ 1331, 1337, 2201, 2202, and Section 10 of the Administrative Procedure Act, 5 U.S.C. Sections 701–706 and the general equity powers of this court.

(2) Unless preliminary injunctive relief is granted, plaintiff will suffer ir-

reparable injury as appears more fully below.

(3) The plaintiff has no adequate administrative remedy or remedy at law and has established that it is likely to prevail on the merits.

(4) The granting of preliminary relief is consistent with the public interest.

■ (5) USDA's notice of cancellation of plaintiff's registrations under the Federal Insecticide, Fungicide and Rodenticide Act, Interpretation 25, and the "Rules Governing the Appointment, Compensation and Proceedings of an Advisory Committee," are final orders which are ripe for review.

(6) The PAX Company has sold its arsenical-based products for over 18 years across the country to approximately 2,000,000 customers.

(7) On July 10, 1967, the plaintiff submitted an application for the renewal of its USDA registrations on two products, PAX Crabgrass Control (USDA Registration No. 3234-9) and PAX Crabgrass and Soil Pest Control (USDA Registration No. 3234-3).

(8) These products and the PAX products hereafter referred to are used on home lawns as fertilizers and herbicides and contain between 25% and 47% arsenic trioxide compounded in a patented formula that makes them unique in the trade and enables PAX Company to compete with giant competitors in the field such as Ortho Division of Standard Oil of California.

(9) USDA informed plaintiff on August 24, 1967 that the registrations would not be renewed without a label "prohibiting use in or around the home." This label would destroy the marketability of the most important products in PAX's limited line of products and would cause PAX to cease business altogether. The stated basis of this action was an appended "Notice to Manufacturers" dated August 1, 1967 applying to products containing more than 2% sodium arsenite or 1.5% arsenic trioxide. The "Notice" stated that "products contain-

ing sodium arsenite and arsenic trioxide" had been involved in numerous "accidents" involving children and domestic animals.

(10) On November 25, 1967, USDA published in the Federal Register a "Notice of Proposed Interpretation Under the Federal Insecticide, Fungicide and Rodenticide Act," which incorporated the precise language used in the "Notice to Manufacturers." The basis of the proposed interpretation was exactly the same as the "Notice to Manufacturers":

> Products containing sodium arsenite and arsenic trioxide have been involved in numerous accidents involving children and domestic animals.

(11) On December 28, 1967, plaintiff requested a public hearing on Proposed Interpretation No. 25 and an opportunity to examine all written materials on file with the Department concerning the Notice of Proposed Interpretation, the data and facts upon which Proposed Interpretation was based, and a conference with USDA so that plaintiff could examine whatever the Department had in presenting its own evidence.

(12) The Department did not provide any evidence to support application of the Proposed Interpretation to PAX's products.

(13) On July 25, 1968, USDA published in the Federal Register an "Interpretation with Respect to Labeling of Sodium Arsenite or Arsenic Trioxide Products" which was to become effective 90 days after its publication (hereafter "Interpretation 25"). Interpretation 25 incorporated the precise operative language of the earlier "Notice to Manufacturers" and "Proposed Interpretation." It cited no factual basis for its promulgation, but stated "thirty days were permitted for interested persons to submit written data, views or arguments in connection with this matter. After thorough consideration of all relevant matters, Interpretation 25 is issued * * *." This "interpretation" prohibits use of products containing more than

2% sodium arsenite or more than 1.5% arsenic trioxide "in or around the home."

(14) The Department agreed to postpone the effective date of Interpretation 25 pending completion of scientific laboratory studies by Dr. Alan K. Done, an eminent toxicologist; Director of the University of Utah Medical School, Poison Information and Therapy Center; professor of pediatrics, of pharmacology and clinical toxicology with some 90-odd publications. The studies were to investigate the toxicities of arsenic trioxide, sodium arsenite and PAX's arsenical products and, in addition, to determine whether PAX products had been responsible for any injuries or death to human beings.

(15) Just before Dr. Done's research was completed, USDA informed the plaintiff by letter dated March 18, 1969, that Interpretation No. 25 would become operative "in the near future. Notices of intent to cancel registration will be mailed to each registrant with products affected by this rule." The letter further stated:

> Our action to restrict these uses was based on the record of accidents involving such products. The products manufactured by the PAX Company were involved in a number of accidental ingestions. Although none of those reported resulted in fatalities, we cannot disregard them as being insignificant.
>
> In its report on 'The Use of Pesticides,' the President's Science Advisory Committee stated that, 'As a corollary to cautious registration of new pesticides, more hazardous compounds might well be removed from the market when equally effective and less hazardous substitutes are found. The Panel believes that it is necessary to modify the use of some especially hazardous and persistent materials now registered.' In keeping with this report and after a thorough evaluation of all the material submitted, we must conclude that the interpretation as published in the Federal Register on July 25, 1968, should be put into effect.

(16) Upon the protest of the plaintiff that USDA had agreed to postpone the effective date of Interpretation 25 until Dr. Done's research was completed, USDA waited until July 18, 1969 to inform the PAX Company that the registrations of the following five PAX Company products would be cancelled 30 days from the receipt of the letter:

(1) New PAX Crabgrass and Soil Pest Control, USDA Reg. 3234–3.

(2) Institutional for Commercial Use Only, PAX Crabgrass and Poa Annua Control, USDA Reg. No. 3234–7.

(3) Guaranteed 3-Year Control PAX Crabgrass and Soil Pest Control Plus Fertilizer, USDA Reg. No. 3234–8.

(4) 3-Year Guaranteed Control PAX Crabgrass Control—Acts 6 Ways, USDA Reg. No. 3234–9.

(5) Professional PAX 3-Year Crabgrass and Poa Annua Control, USDA Reg. No. 3234–15.

(17) In the same communication, USDA stated that "We have previously considered the possibility of requesting the appointment of an ad hoc advisory committee of the National Academy of Sciences to hear the evidence and make recommendations. However, we now find it necessary to proceed in conformity with section 4(c) of the Act. This interpretation becomes effective this date * * * Consequently notice is hereby given that all of these registrations will be cancelled 30 days from the receipt of this registered letter."

(18) USDA's refusal to submit the issue to a science advisory committee was prompted by Congressional pressure placed on USDA officials in Congressional hearings May 7 and June 24, 1969.

(19) On August 18, 1969, plaintiff filed a petition pursuant to Section 4(c) of the Insecticide Act requesting that the matter be referred to an advisory committee of experts selected by the Nation-

al Academy of Sciences. Eight days after the filing of the petition, USDA for the first time published "Rules Governing the Appointment, Compensation and Proceedings of an Advisory Committee;" and "Rules of Practice Governing Hearings Under the Federal Insecticide, Fungicide and Rodenticide Act."

(20) On June 17, 1970, USDA informed plaintiff for the first time that an advisory committee had been established on April 9, 1970 to review the matter of cancellation of registration of plaintiff's products. The files of USDA which formed the basis of the Department's cancellation action were submitted to the advisory committe, with copies provided the plaintiff. Included in the file was a "Statement of USDA Position Regarding Sodium Arsenite and Arsenic Trioxide." This statement set forth still different reasons for the cancellation action from those that had theretofore been asserted by USDA. The "Statement" states as follows:

> Certain products containing sodium arsenite and arsenic trioxide with directions for use in or around the home have been registered since 1949. These include insecticide and rodenticide bait formulations as well as certain herbicide formulations. We have been concerned for some time over the number of reported accidents involving such products. (Exhibit 27). In 1967, we tabulated and analyzed accidents involving such products which were reported to the National Clearinghouse for Poison Control Centers or otherwise brought to our attention (Exhibit 27).

> In review of applications for registration under the Interdepartmental Agreement, the Department of Health, Education and Welfare has consistently recommended against registration of such products for use in or around the home (Exhibit 10).

> On the basis of our evaluation of the accident reports and DHEW's position, we have determined that the continued registration of certain sodium arsenite and arsenic trioxide products for use in or around the home is contrary to the provisions of Section 2z(2) (c) (d) and (2) (g) of the Federal Insecticide, Fungicide, and Rodenticide Act and such registrations should be cancelled.

(21) For the 18 years that PAX arsenical products have been on the market, there have been no more than nine instances of ingestions of PAX products.

(22) In fact these reports, including reports from the National Clearinghouse for Poison Control Centers, show not a single case of serious injury or fatality involving PAX products.

(23) The term "accident" as used in poison control center reports means "ingestion" and does not denote or connote any injury of any kind as a result of ingestion.

(24) The occurrence of "accidents" as referred to by USDA documents refers to "ingestions" and the allegations of "accidents" does not mean that PAX has caused any injuries.

(25) The most frequently reported product of "accidental" ingestions of poisons is aspirin, amounting to 25.8% of the total "poisonings;" followed by soaps, detergents and cleaners, 4.2%; and bleach, 3.6%.

■ (26) Allegations of "accidents" is legally insufficient basis for cancelling a registration under the Federal Insecticide Act.

(27) On June 26, 1970, plaintiff applied to USDA to make a change in the formula of PAX 3-Year Crabgrass Control (USDA Registration No. 3434–3), to change the chemical "heptachlor" which presently is being banned or under consideration for banning in several states, to "chlordane," which is acceptable in all states. At an earlier date USDA had in fact accepted for registration the same arsenical product with the chemical chlordane. USDA, however, informed the plaintiff that the registration of PAX 3-Year Crabgrass Control would not be renewed pending the outcome of administrative proceedings with respect

to the arsenical problem, even though the Department made no objection as such to the substitution of chlordane for heptachlor.

■ (28) Refusal to register a product under the Insecticide Act because a party has invoked legal remedies is arbitrary and capricious, and a denial of due process of law.

(29) This court has jurisdiction to determine the validity of Interpretation 25 because Section 4(c) of the Insecticide Act does not provide for judicial review of regulations promulgated by the Department of Agriculture and because in any event there is no adequate remedy at law.

■ (30) Interpretation 25 is arbitrary, capricious and discriminatory in prohibiting more than 1.5% or 2% sodium arsenite in products used in or around the home. Sodium arsenite is highly soluble, more than nine times as toxic as arsenic trioxide and has a record of having caused human fatalities. Sodium arsenite would be classified as highly toxic to man (as measured by lethal effect in rats when the poison is administered orally) under standards contained in USDA Regulations (7 C.F.R. 362.8). Sodium arsenite has an LD50 toxicity of 42 mg./kg. in rats. Arsenic trioxide has an LD50 toxicity of 385. Arsenic trioxide is not a product highly toxic to man, under USDA standards. PAX Crabgrass Control containing 25% arsenic trioxide has an LD50 rate of 542 mg./kg. PAX Crabgrass Control containing 47% arsenic trioxide has an LD50 rate of 702 mg./kg. Household aspirin has an LD50 rate of 712 mg./kg. Sodium arsenite is nine times as toxic as pure arsenic trioxide and 17 times as toxic as PAX Crabgrass Control containing 47% arsenic trioxide.

(31) Sodium arsenite is often marketed in liquid form, making it easy to ingest and absorb in large quantities of lethal proportions. Arsenic trioxide is very low in solubility. The only products containing arsenic trioxide for use on lawns are PAX products, all of which are marketed as granular products making ingestion and absorption difficult.

■ (32) Application of Interpretation 25 to dry granular herbicides such as PAX Company products is arbitrary and unreasonable because PAX Company products have never been involved in a single fatality nor in a single instance of poisoning of human beings in which any significant injury resulted and because PAX products have a low order of toxicity.

■ (33) Interpretation 25 is illegal and unlawful because the USDA failed to employ proper procedures in its promulgation, i. e., no adjudicatory type hearing procedure was followed as required by the Administrative Procedure Act and by the Federal Insecticide, Fungicide and Rodenticide Act.

■ (34) USDA has acted arbitrarily, unreasonably and in violation of statutory authority and in violation of the Fifth Amendment of the Constitution by submitting to pressure from individual congressmen in making adjudicative type administrative decisions involving PAX Company products. A Congressional subcommittee applied psychological pressure on Department of Agriculture employees to ban PAX Company products and to refrain from seeking additional scientific advice.

■ (35) The Department of Agriculture has acted arbitrarily, unreasonably and capriciously and in violation of the due process clause of the Fifth Amendment to the United States Constitution in seeking to cancel PAX's arsenical registrations despite uncontradicted evidence in its files that PAX Company products have never caused any human deaths or serious injury and is a product not highly toxic to man and has a low order of toxicity roughly equivalent to that of aspirin.

■ (36) The Department of Agriculture has acted arbitrarily, capriciously and beyond its authority under the Insecticide Act, and in violation of the due process clause of the Administrative

Procedure Act in invoking its power of cancellation on grounds that are legally insufficient for the exercise of administrative power under the statutory authority given the Department of Agriculture and in shifting its stated reasons for its actions.

(37) USDA has never alleged and its files show that it has never investigated the question whether any of the ingestions of PAX products, or of arsenic trioxide products generally, were made under circumstances in which the directions for use had been complied with, or whether the warning given had been complied with, or whether the products when used as directed or in accordance with commonly recognized practice were injurious to man or animals, as required by Section 2z(2) (c) (d), and (g) of the Federal Insecticide Act.

(38) Dimercaprol is an effective antedote for arsenic trioxide poisoning.

(39) USDA has never charged that the plaintiff's products have resulted in any injuries of any kind to humans. Ingestions by animals have not been numerous, and injuries and fatalities to animals, if any, have been insignificant in number.

(40) Numerous conferences between plaintiff's representatives and the Department of Agriculture have repeatedly demonstrated that the Department has no evidence either that arsenic trioxide as used in PAX Company products is highly toxic or that those products have caused injury. The plaintiff, however, has at its own great financial expense funded scientific experiments and studies which prove the contrary. The experiments were undertaken pursuant to statutory procedures outlined in the Federal Insecticide and Food, Drug and Cosmetic Acts.

(41) The "Rules Governing the Appointment, Compensation and Proceedings of an Advisory Committee * * *" (7 C.F.R. 364.10, et seq.) promulgated by the Department are beyond statutory authority, arbitrary and abuse of discretion and a denial of due process of law (and to the extent that some of these rules may be authorized by portions of Section 4(c) of the Insecticide Act, the court finds there are substantial questions of the legality of that section which will be finally adjudicated in the court's final declaratory judgment) in the following particulars:

(a) The Secretary of Agriculture selects, and in this case has selected, the members who are to sit on the scientific advisory committee.

(b) The Rules permit, and in this case the Secretary has asked, the advisory committee to make a "recommendation as to the registration of the article * * *," unguided by legal standards. The Rules do not limit the committee's function to finding scientific facts.

(c) The Rules do not require and the Secretary has not in fact provided a biographical sketch showing the background of the members of the advisory committee and their connection with academic and commercial institutions, even though the Secretary himself is empowered to obtain that information concerning the background of the committee members.

(d) The Secretary may require advance deposits as a condition of obtaining a hearing before an advisory committee.

(e) Assessing the costs of the Secretariat against a petitioner, and imposing the burden of proof in a hearing before the Secretary upon a registrant.

(f) Permitting the scientific advisory committee to proceed to make a recommendation without a right assured to a petitioner to appear before the committee as a group and to confront those who provide evidence.

(42) The imposing of expenses of per diem compensation of the advisory committee and their travel and subsistence expenses upon a petitioner also raises substantial issues of the constitutionality, pro tanto, of Section 4(c) which will

be finally resolved on this court's final judgment of a declaratory order.

(43) The Secretary of Agriculture acted arbitrarily and capriciously and beyond lawful authority in refusing to waive the fees and the $2,500 deposit required by the Rules because his refusal to submit the issue to an advisory committee was a result of pressure and interference by congressmen with proper application of administrative processes; because of the substantial sums expended by the petitioner in this case on original scientific research which was made available gratis to the Department of Agriculture; and because of the condition of financial hardship of the plaintiff.

(44) Pliantiff will suffer irreparable injury for which it has no legal remedy at law if administrative proceedings are permitted to continue. The proceedings before a scientific advisory committee would have no lawful effect. Requiring that the plaintiff in this case comply with such procedures, when no adequate basis for the invoking of administrative power has been established, would have the effect of requiring the plaintiff to expend substantial sums of money to pursue unlawful procedures.

(45) The expense of appearing before a science advisory committee and the per diem and travel costs of committee members would be approximately $6,200.

(46) Plaintiff has suffered substantial net operating losses for the past five years, as follows:

| | |
|------|----------|
| 1965 | $208,401 |
| 1966 | 224,259 |
| 1967 | 254,656 |
| 1968 | 264,214 |
| 1969 | 339,218 |

(47) Plaintiff is in a highly competitive industry dominated by several giants and its continued ability to compete would be substantially impaired through further unnecessary expenditure of funds in lawless procedure.

(48) Interpretation 25 and the cancellation proceedings are prompting state officials to take the same action against arsenic trioxide.

(49) The defendants will not incur or suffer any costs or damages if it is found that they have been wrongfully enjoined or restrained pursuant to this order, and therefore this preliminary injunction may issue without plaintiff's giving security or bond.

Therefore, it is hereby ordered, adjudged and decreed, as follows:

That the defendants' motion to dismiss for failure to state a claim and for lack of jurisdiction over the subject matter is hereby denied.

That each of the defendants and each person acting under his or their direction or authority, or in active concert or participation with them, and each employee or agent of the United States Department of Agriculture is hereby enjoined, pending further order of this court, from taking any further action to cancel the registrations of any of PAX Company products because they contain arsenic trioxide, unless the defendants, their employees and agents, base their action upon evidence which would provide a lawful basis for cancellation.

That the defendants, their servants and agents are enjoined, pending further order of this court, from enforcing Interpretation 25 against PAX Company products; and they further are enjoined, pending further order of this court, from permitting any proceedings before a science advisory committee concerning PAX Company arsenical products to go forward under the "Rules Governing the Appointment, Compensation and Proceedings of an Advisory Committee; and Rules of Practice Governing Hearings Under the Federal Insecticide, Fungicide and Rodenticide Act."

That the defendants, their employees and agents, are enjoined, pending further order of this court, from refusing to register PAX 3-Year Crabgrass Control with chlordane instead of heptachlor.

This order is entered without prejudice to the defendants issuing a notice

of cancellation with respect to the following products in accordance with law, provided that no cancellation shall become effective prior to the completion of the administrative proceedings provided for by law:

(1) PAX 3-Year Crabgrass Control, USDA Reg. No. 3234–3.

(2) Institutional for Commercial Use Only, PAX Crabgrass and Poa Control, USDA Reg. No. 3234–7.

(3) Guaranteed 3-Year Control PAX Crabgrass and Soil Pest Control Plus Fertilizer, USDA Reg. No. 3234–8.

(4) 3-Year Guaranteed Control Crabgrass Control—Acts 6 Ways, USDA Reg. No. 3234–9.

(5) Professional PAX 3-Year Crabgrass and Poa Annua Control, USDA Reg. No. 3234–15.